ELISHA A. JONES *vs.* LEWIS RICHARDSON, Executor.

In a suit to recover a legacy of an executor, who is residuary legatee, and has given bond, pursuant to the Rev. Sts. c. 63, § 3, to pay all the debts and legacies of the testator, the plaintiff is not-required to give any other proof, besides such bond, that the defendant has assets in his hands. And *it seems,* that such executor, who has given such bond, is bound to perform the condition of his bond, although he has not assets.

A writing given by a child to a father, acknowledging the receipt of an advancement, cannot be used by way of set-off in a suit by the child to recover a legacy given to him in a will afterwards made by his father, nor as evidence of the payment or ademption of such legacy.

A judgment against a claimant, which is a bar to another suit on the claim, is also a bar to the use by him of the same claim by way of set-off.

ASSUMPSIT to recover a legacy given to the plaintiff's wife, (who died before this action was commenced,) by the last will of Asa P. Richardson, the defendant's testator. Trial in the court of common pleas, before *Strong*, J.

It was proved and admitted, that Asa P. Richardson, the testator, made and duly executed his last will, on the 4th⁷ of August 1836, by which the defendant was made executor and residuary legatee, and in which a legacy of $ 200 was given to Hannah Jones, wife of the plaintiff; that said will was proved and allowed on the 15th of August 1837, and that the defend ant took upon himself the trust of executor, and gave bond, with sureties, conditioned to pay all the debts and legacies of said testator.

It was in evidence, that before the making of said will, said Hannah was married to the plaintiff, and continued his wife until after the will was proved, but that she deceased before the commencement of this action ; and that the plaintiff had duly made a demand on the defendant to pay said legacy.

The defendant contended, upon this evidence, that the plaintiff had failed to make out a case, as he had not proved assets in the hands of the defendant ; and he requested the court so to instruct the jury. But the court ruled that the plaintiff was not bound to prove assets in the defendant's hands.

The defendant then offered in evidence three receipts given by the plaintiff to the testator, each of them being expressed to be in part of the portion of the plaintiff's wife in her father's (the testator's) estate. The first of these receipts was for $383, dated April 2d 1821 ; the second, for $50, dated December 25th 1822 ; and the third, for $130, dated June 18th 1823.

The defendant also offered in evidence a promissory note given by the plaintiff to the testator, dated April 21st 1821, and subscribed by an attesting witness, promising to pay the testator $80 on demand.

It appeared that the defendant, as executor, had brought an action against the plaintiff, on said note, and that at the April term, 1841, of the court of common pleas, a verdict was returned in favor of the defendant in that action, (the plaintiff in this,) on which verdict a judgment was rendered.

It also appeared that said testator made several wills, before he made that under which the plaintiff claims the legacy now sued for ; which wills were, from time to time, cancelled when a new will was executed.

The court ruled that the abovementioned receipts and note could not be admitted in defence of the action, and directed the jury that the plaintiff was entitled to their verdict, which they returned accordingly. The defendant alleged exceptions to the rulings of the court.

*J. P. Bishop*, for the defendant.

*Wilkinson*, for the plaintiff.

SHAW, C. J. This is an action at common law, by the hus-

band of a deceased legatee, against the defendant as executor. No question is made in the case, of the husband's right to sue for a legacy given to his deceased wife ; in fact it does not appear that he does not sue as administrator, in which capacity he would have a right to sue and recover the amount to his own use. His discharge would be a good bar to any other claim ; and therefore the exception, if taken, would only involve a question of amendment, and perhaps of costs. But we understand that the exception is expressly waived ; and I mention it, only lest it should be understood as the opinion of the court, that the husband, after the decease of his wife, may sue for a chose in action, which accrued to her during coverture, in his own right, contrary to decided cases.

This is an action at law for a legacy, and it is expressly given by the Rev. Sts. c. 66, § 16, following the old *St.* of 1783, c. 24, § 17. The great question in the case is, whether the defendant, being residuary legatee, and having given bond, conditioned to pay all the debts and legacies, pursuant to the provisions of the Rev. Sts. c. 63, §§ 3, 4, can object to want of proof of assets ; or rather, whether the production of such a bond from the probate office is not conclusive evidence of assets in the hands of the defendant : And we are strongly inclined to the opinion that it is.

In the first place, it seems very clear from the statutes that such a bond is *primâ facie* evidence of assets, in favor of a legatee and against an executor ; and, being *primâ facie*-evidence, it would stand as conclusive, unless controlled and rebutted by countervailing proof on the other side.

It is the manifest policy of the statutes of this State, to require, as the general rule, both executors and administrators to return an inventory of both the real and personal estate, with an appraisement on oath, by competent persons. The obligation of the executor to make such inventory complete is secured by his oath and his bond ; and on a return of such inventory, after time for diligent inquiry, he is still bound in like manner to make a further return, if further property of his testator should come to his knowledge. He is also armed with a power,

with the aid of the judge of probate, and upon interrogatories, to require disclosures, on oath, of any person suspected of concealing or embezzling the property. Rev. Sts. *c.* 65, § 7. The obvious purpose of these provisions is, we think, that creditors and legatees may have, on the records of the probate court, the most authentic evidence of assets. But as a benefit and indulgence to an executor, who is also a residuary legatee, this inventory is, at his election, dispensed with, provided he will give a bond conditioned to pay all the debts and legacies. The provision in Rev. Sts. *c.* 65, § 1, is, that he shall be thereupon excused from returning an inventory. The purpose of this provision cannot be mistaken. In the case supposed, where the executor is himself the residuary devisee and legatee, it is obvious that no person can have an interest in providing and preserving evidence of assests, but creditors and legatees. If therefore — such is the substance of this enactment — the executor will put creditors and legatees in as good a situation, as if an inventory had been returned, he may be excused the labor and expense of making one. It is at his own option to give such bond, or one in the usual form. In the latter case, the executor would be responsible only for the assets received. It is said that a bond to pay debts and legacies is taken almost as a matter of form, in the probate office, with very little regard to the state of the assets. If it be so, it is certainly a very rash practice, and one to be discountenanced. It is very convenient in many cases ; as where, for instance, a man of ample fortune leaves one or two sons, with few debts and small legacies ; but can never be resorted to safely, where there is any doubt of the assets.

One mode of testing this question is, to consider what would be the effect, if such executor were sued for a debt. Could he plead *plene administravit*, or represent the estate insolvent ? We think not. Such a representation must be founded practically on a comparison of the list of claims, with the assets, of which the inventory is usually the evidence.

Perhaps it may be said, that by the express condition of the bond, the executor and his sureties are bound to pay the debts

and legacies ; that creditors or legatees have a remedy, in the name of the judge of probate, on the bond ; and that such is their only remedy. But this is opposed, both by the statute and by a long course of decisions. It is provided by the Rev. Sts. c. 63, § 4, that the giving of such bond — to pay debts and legacies — shall not (with certain exceptions) discharge the lien on the real estate of the testator, &c. But in order to charge the real estate, or the goods and personal estate of the testator, it is necessary to obtain a judgment against the executor ; and this shows conclusively that the bond was intended as a cumulative, not an exclusive remedy, and that the creditors and legatees were left to the usual remedy against the executor, as such. Otherwise, it would happen, that although the testator left ample property, yet if the executor and the sureties on his bond should become insolvent, the legatee would be without remedy.

That such a bond is collateral security only, leaving the legatee to any other remedy he may have, has been decided as the true construction of a similar provision in *St.* 1783, *c.* 24, § 17, by a series of cases. *Gore* v. *Brazier,* 3 Mass. 542. *Thompson* v. *Brown,* 16 Mass. 180.

In the case of *Stebbins* v. *Smith,* 4 Pick. 97, it seems to have been rather taken for granted, than decided by the court, that giving a bond to pay debts and legacies was an admission of assets to pay debts. *Clarke* v. *Tufts,* 5 Pick. 337.

The cases cited for the defendant, from the New York reports ; *Ten Eyck* v. *Vanderpoel,* 8 Johns. 120 ; *Schoonmaker* v. *Roosa,* 17 Johns. 301 ; *Bank of Troy* v. *Topping,* 9 Wend. 273 ; have no bearing on this case. I am not aware that there is any such statute in New York. Those cases merely show that an executor or administrator, having given his own promissory note for the debt of his testator or intestate, is not bound beyond the amount of assets. Beyond that, the promise is *nudum pactum.* Here the question is, whether the bond is an admission of assets.

It is not merely by force of the bond, as a contract, that the admission of assets is shown ; it is rather the result arising from the fact of giving the bond, the provisions of law under which it is given, and the entire power, which the executor thereby ac-quires over the estate, and the exemption which he thereby

obtains, from furnishing the usual proof of assets. To many purposes, the executor, having given such bond, is thereby and by force of the will, regarded as the absolute owner of the estate of the testator.

It is quite sufficient for the purposes of the present case, to hold that such bond is, *primâ facie,* an admission of assets, without holding it conclusive ; because the executor offered no evidence to rebut the inference to be drawn from it. Whether it would be competent for an executor, after giving such bond, to show that he acted under some palpable mistake, or that the whole property of the testator had been destroyed by means over which he had no control, we give no opinion. In a direct action on the bond, in the name of the judge of probate, it is difficult to see how such a defence could prevail ; because the condition of the bond is not to pay if there are assets, but to pay at all events.

It is further argued, that the court erred in ruling that the plaintiff was not bound to prove assets in the hands of the defendant. This was said in answer to a suggestion of the defendant, that upon this evidence, the plaintiff had failed to make out a case, inasmuch as he had not proved assets in the hands of the defendant ; and he thereupon requested the court so to instruct the jury. This instruction must be taken with reference to the subject matter and the state of the proof ; in which case it was correct. It was, in effect, that no other proof of assets in the hands of the defendant was necessary, at least until something was offered on the other side.

In regard to the note and receipts offered in evidence by the defendant, we are of opinion that they were rightly rejected. The note, supposing it offered by way of set-off, could not avail, because a suit had been brought upon it, by the present defendant, and judgment was thereon rendered for the then defendant, which is a bar. Being a bar to another action, on the principle of *res judicata,* it is equally effectual as a bar to the use of the same note by way of set-off.

As payment or ademption of the legacy, neither the note nor the receipts could avail, because the will was made long after

they were given. Had the father died intestate, these receipts would have been good evidence of advancements ; but when a man makes his will, all prior advancements are considered merged, and the testator must be deemed to have graduated the amount of his legacy to his daughter, with reference to prior advancements.

*Exceptions overruled.*